DAVOUD RAKHSHAN, Petitioner

v.

TUILEFANO VAELA'A, Commissioner of Public Safety and FUE
TUITELELEAPAGA, Warden, Tafuna Correctional Facility,
Respondents

High Court of American Samoa
Trial Division

CA No. 104-90

January 31, 1991

Before REES, Associate Justice, AFUOLA, Associate Judge, and
MATA'UTIA, Associate Judge.

Counsel: For Petitioner, William H. Reardon
For Respondent, Aitofele T. Sunia

Petitioner, an alien who is being held in connection with deportation
proceedings, sued for a writ of habeas corpus. A writ was issued,
ordering respondents to produce the petitioner in Court. The respondents
appeared as ordered, produced the petitioner, and stated their position
that his continued detention was authorized by the immigration statutes
and by the Court's orders in the ongoing immigration case, *Rakhshan v.
American Samoa Government*, AP 7-90. The Court continued the
hearing, appointed counsel for the petitioner, and ordered the parties to
submit briefs with respect to the issues raised by the petition and by the
respondents' answers.

Shortly before the new hearing date the Court received a
handwritten letter from the petitioner, alleging that another inmate at the

Correctional Facility, one Afoa Mata'itusi, had threatened that "he is going to kill me because I am sueing [sic] the warden of C.F." The letter further alleged that Afoa has a spear with which he hunts dogs and cats and that petitioner had reported the threats to the warden but that ...othing had been done.

At the continued hearing the Court ruled that the matters in the original petition, having to do with the lawfulness of petitioner's detention itself, had been addressed and resolved in the immigration case and could not now be raised by habeas corpus. The Court continued the hearing yet again, however, so that both parties might address the issues raised by petitioner's letter having to do with the conditions of his confinement.

At the second continued hearing we heard testimony from petitioner himself, from inmate Afoa, and from two other witnesses to Afoa's threats against the petitioner. We find the facts to be as follows:

1) Inmate Afoa Mata'itusi is serving sixty years' worth of consecutive sentences for rape and murder. He raped his step-daughter in 1978 and then murdered a fellow prisoner with a bush knife later the same year.

2) Prior to his two 1978 convictions, Afoa had "a lengthy record . . . with the criminal justice system in Western Samoa." *American Samoa Government v. Agasiva*, 6 A.S.R.2d 32, 37 (1987). The presentence report in the rape case recommended that Afoa not be released for any purpose during his term of confinement, and that he be segregated from the rest of the inmates, "[t]o safeguard the lives of others in the Community as well as inmates." *Id.* The Court that sentenced him for murder required that he be confined in a state or federal institution in the United States (as was then done with especially dangerous offenders) pending construction of a new prison facility "that would allow a suitable accommodation for felons of this type." Judgment and Sentence, *American Samoa Government v. Mata'itusi*, CR No. 45-78 (issued July 6, 1978). The sentence also forbade access to any "work release" programs.

3) Contrary to the Court's order, Afoa Mata'itusi was not sent to an off-island prison. Although he may once have been segregated from other inmates in the territorial correctional facility, by 1987 this was no longer the case. *See Agasiva, supra.* Indeed, the Court found in 1987 --- in a case with facts quite similar to those now before us ---

the Court found that the prison authorities had designated Afoa an informal "matai" with extraordinary quasi-official power over his fellow inmates. *Id.* at 37-40.

4) In the *Agasiva* case the Government maintained that Afoa had been thoroughly rehabilitated and was no longer a threat to other inmates. The warden even "presented himself as a character witness for inmate Afoa." *Id.* at 38. The Court rejected the Government's contention in the strongest possible terms:

> [I]nmate Afoa presents a real danger to the defendant . . . from a "physiological and psychological perspective." We find defendant's fears to be objectively demonstrated and they give rise to the situation whereby his term of imprisonment is made more burdensome than the law allows. Inmate Afoa is not only a dangerous felon, but he actively trades on his reputation in order to instill fear and to manipulate a following with certain of the inmate population. His potential for violence is exacerbated and perhaps encouraged with the ostensible imprint of official sanction . . . .

*Id.* at 39. Specifically, the Court found that Afoa was an "institutional bully" who had recently struck one inmate on the face with a two-by-four, pummelled another with a rock, and "openly threatened to cut up another prisoner." *Id.* The Court further noted that "[t]he instrument used in the killing for which Afoa was convicted was a bush knife, and testimony had it that Afoa has ready access to such knives." *Id.*

5) The Court therefore ordered that Afoa be segregated from the complaining inmate, and that the complaining inmate "shall not as a result thereof be segregated from the remainder of the inmate population." *Id.* at 41. In other words, the required insulation of the complainant from Afoa could not be achieved by locking the complainant up in some out-of-the-way place while allowing Afoa to run loose.

6) At the recent hearing, the Government conceded that inmate Afoa, although nominally in "maximum security," in fact is allowed the run of the correctional facility. It also appears that he is frequently allowed to leave the correctional facility for various purposes.

7) Inmate Afoa did in fact threaten the life of petitioner

20

Rakhshan on at least one occasion. He told some visitors from the Seventh Day Adventist Church that they had better dissuade Rakhshan from suing a certain friend of his, or he, Afoa, would "chop him up."

8) Afoa did make himself a spear, which the Warden has since taken away. However, it appears that Afoa still has access to bush knives.

9) It appears that the prison authorities --- including the Warden, who was relieved of his duties for a time after the 1987 "matai system" incident but has since been reinstated --- may still regard Afoa as an eccentric but useful fellow who has been unfairly maligned by certain troublesome inmates and by their pesky judicial protectors. Afoa himself testified at the recent hearing. He still regards himself as a matai (an apparent reference to his role within prison society rather than to a formally invested, legally registered matai title) and states that the other prisoners regard him as their leader and that he is the one who teaches them about Samoan customs. He says the prison authorities like him because he always follows the rules. He denies threatening Rakhshan and also denies the rape for which he was originally sent to jail, but freely admits killing another inmate because that inmate was planning to kill him and the Warden. (One of the alleged death threats against Rakhshan has to do with a lawsuit Rakhshan has brought against the Warden.)

The position now taken by the Government on Rakhshan's petition echoes the position the Warden took (and the Court rejected) in the 1987 *Agasiva* case: that Afoa is thoroughly rehabilitated, a gentle soul who is no threat to anyone except perhaps the occasional dog or cat, and that the real problem in the correctional facility is troublemakers like Rakhshan. Counsel argued that Afoa's recent threat to "chop up" Rakhshan must be understood as a way of "expressing his feelings" rather than as anything to worry about.

This is dangerous nonsense. We agree with the assessment of Chief Justice Miyamoto in 1978, and of Chief Justice Kruse in 1987, that Afoa presents a clear danger to those of his fellow inmates who will not acknowledge his "leadership" or whom he perceives as inconvenient to his friends, who appear to include the prison authorities. We further agree with Chief Justice Kruse's holding in *Agasiva* that the Government's right to hold a prisoner gives rise to "a correlative duty to protect that prisoner against assault and injury." 6 A.S.R.2d at 39. This is especially true in the case of petitioner Rakhshan, an immigration

21

detainee who has been convicted of no crime.[1]

We conclude that Rakhshan is entitled, as was the petitioner in *Agasiva,* to relief from conditions of confinement that include exposure to Afoa or to any other inmate of proven vicious temperament. The Government may afford this relief in any of several ways:

1) It may choose to house immigration detainees in a separate facility from convicts;

2) It may transfer inmate Afoa to a genuinely secure facility in the United States, as required by his sentence, and make similar arrangements for other dangerous inmates;

3) It may release petitioner Rakhshan pending further deportation proceedings, notwithstanding his earlier bail violation; or

4) It may devise a system by which non-dangerous inmates such as Rakhshan will be protected from dangerous ones such as Afoa. Such a system, as noted by the Court in *Agasiva,* must operate by restricting the freedom of the dangerous inmates rather than the non-dangerous ones. This would necessitate dramatic changes in the current hotel-like arrangement by which almost all inmates, including recent rapists and murderers, are allowed not only to roam free within the prison grounds but also to come and go on "work release," "home release," or just to run personal errands. It would seem, however, to be the obvious solution to this case and to others like it.

---

[1] This is not to say that Rakhshan has not brought many of his troubles on himself. His continued presence in the correctional facility is due partly to his having run afoul of the immigration laws, partly to his having violated the terms of a bail that was granted by the Court, and partly to his having asked to be sent to a country whose immigration laws would allow him to apply for asylum and then having rejected a proposed stipulation by which he would be transported to Honolulu in order to present his asylum claim to United States immigration authorities. He also seems to have a real talent for alienating people. None of this, however, can justify conditions of detention which include threats that he will be "chopped up" by someone who has demonstrated the ability and disposition to chop people up. The petitioner in *Agasiva* had killed a man, and yet the Court held that it was unconstitutional to punish him by exposure to Afoa. 6 A.S.R.2d at 39-40.

The Government shall report to the Court no later than Thursday, February 7 which of these arrangements it has chosen to make. In the meantime, the Court's interim order that inmate Afoa not be allowed within fifty feet of petitioner Rakhshan remains in force.

It is so ordered.

